## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES TOMECSKO, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : **Case No.:** 2:21-cv-1081 |
| | : |
| MURPHY FAMILY, INC., | : |
| | : |
| Defendant. | : **COMPLAINT IN CIVIL ACTION** |
| | : |
| | : |

Filed on Behalf of Plaintiff:
James Tomecsko

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

J.P. Ward & Associates, LLC.
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:   (412) 545-3015
Fax No.:       (412) 540-3399
E-mail:         jward@jpward.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAMES TOMECSKO,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : Case No.: |
| | : |
| **MURPHY FAMILY, INC.,** | : |
| | : |
| **Defendant.** | : |
| | : |
| | : |

## COMPLAINT

AND NOW, comes Plaintiff, James Tomecsko, by and through the undersigned counsel, J.P. Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Murphy Family, Inc., of which the following is a statement:

## PARTIES

1. Plaintiff, James Tomecsko (hereinafter "Mr. Tomecsko"), is an adult individual who currently resides at 890 Main Street, Denbo, Pennsylvania 15429.

2. Defendant, Murphy Family, Inc., (hereinafter "Murphy Family"), is a corporation with its principal place of business located at 585 East National Pike, Washington, Pennsylvania 15301.

## JURISDICTION AND VENUE

3. Jurisdiction is proper as Mr. Tomecsko brings this lawsuit under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* (hereinafter "the FLSA"), the Pennsylvania Minimum Wage Act, 43 Pa. Stat. Ann. §333.101, *et seq.* (hereinafter "the PMWA"), the Families First Coronavirus Response Act (hereinafter, the "FFCRA") and the Wage Payment and Collection Law, (hereinafter "WPCL"), 43 P.S. §260.1 et seq.

4. This Court has supplemental jurisdiction over Mr. Tomecsko's state law claims pursuant to 28 U.S.C. § 1367(a).

5. At all relevant times, upon information and belief, Murphy Family is a company with less than 500 employees and therefore is subject to the recently enacted Families First Coronavirus Response Act (FFCRA), which is compromised of the Emergency Paid Sick Leave Act (EPSLA) and the Emergency Family and Medical Leave Act (EFMLA). Murphy Family is also subject to the Family and Medical Leave Act (FMLA).

6. The EPSLA and EFMLEA were two new emergency paid leave requirements passed by Congress and signed by the President under the circumstances of the unprecedented public health emergency of the COVID-19 pandemic. At the time the law was passed, numerous state governments, including Pennsylvania's, had issued shut down orders requiring schools and workplaces to be closed and residents to remain at home except for essential life-sustaining activity.

7. Mr. Tomecsko is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

8. On or about November 1, 2020, Mr. Tomecsko initiated employment with Murphy Family as a Service Manager.

9. Mr. Tomecsko's duties included creating invoices and customer service and engagement.

10. On or about December 9, 2020, Mr. Tomecsko became ill with COVID-19 related symptoms and was forced to leave work early.

11. The following day, on or about December 10, 2020, Mr. Tomecsko emailed Owner/General Manager, Stephen Reihner (hereinafter, "Mr. Reihner) to inform him of his continued illness and related doctor's visit scheduled the following day.

12. In response, Mr. Reihner instructed Mr. Tomecsko to remain at home.

13. On or about December 11, 2020, Mr. Tomecsko attended a doctor's appointment to which he received a work excuse for December 9, 2020, through December 17, 2020. Further, the note included a work release granting him permission to return to the workplace without restrictions on December 18, 2020. A true and correct copy of the work excuse and release is attached hereto, made a part hereof, and marked as Exhibit "A".

14. Additionally, Mr. Tomecsko received a rapid COVID-19 test and a COVID-19 test swab to be sent to the lab for results, to which a result could take up to ten days to receive.

15. Immediately following his doctor's visit, Mr. Tomecsko sent a photo of the work excuse and release via email to Mr. Reihner. Further, Mr. Tomecsko informed Mr. Reihner of his negative test result on the rapid COVID-19 test and his subsequent order to self-isolate for ten days or until the results came back. A true and correct copy of the email chain is attached hereto, made a part hereof, and marked as Exhibit "B".

16. On or about December 16, 2020, Mr. Tomecsko emailed Mr. Reihner to inform him that he had yet to receive his COVID-19 test swab results from the doctor and that he intended to return to the workplace the following Friday due to the end of his ten-day quarantine.

17. In response, Mr. Reihner informed Mr. Tomecsko to return only once he received a negative COVID-19 test.

18. On or about December 17, 2020, Mr. Tomecsko called his doctor to inquire about the status of his results. Mr. Tomecsko was notified his sample was inadvertently overlooked and never sent to the lab. As a result, Mr. Tomecsko had to return to the doctor the following Monday to receive another swab.

19. Thereafter, Mr. Tomecsko asked if he would be paid for his time-off relating to his possible COVID-19 diagnosis and subsequent test swab, to which he was informed to file for unemployment.

20. Immediately following notification of the delay in test results, Mr. Tomecsko emailed Mr. Reihner to inform him of the doctor's mishap.

21. Mr. Tomecsko's new swab received a negative test result and thereafter, Mr. Tomecsko returned to work on or about late December of 2020.

22. On or about mid-May of 2021, Mr. Tomecsko was terminated from his position with Murphy Family.

23. At the time of his termination, Mr. Murphy was verbally offered severance pay in the form of one week of vacation pay, to which he accepted.

24. Further, upon information and belief, as enumerated in Murphy Family's employee handbook, an employee earns one week of vacation pay following ninety days of employment.

25. Mr. Tomecsko had been employed with Murphy Family for over ninety days at the time of his termination and therefore had accrued and was entitled to one week's worth of vacation pay.

26. As of the filing of this Complaint, Mr. Tomecsko has yet to be compensated for his accrued vacation pay or for the final day of his employment.

## COUNT I
## FFCRA INTERFERENCE

27. Mr. Tomecsko incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

28. Under the FFCRA, an "eligible employee" is an employee who has been employed by his or her employer for more than 30 calendar days prior to the requested leave. 116 P.L. 127, Enacted H.R. 6201, 134 Stat. 178 §3102(b)(a)(1)(A).

29. Under the FFCRA, a qualifying employer is an employer with "fewer than 500 employees." 116 P.L. 127, Enacted H.R. 134 Stat. 178 §3201(b)(a)(1)(B).

30. The FFCRA states "An employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because…The employee has been advised by a health care provider to self-quarantine due to concerned related to COVID-19…The employee is experiencing symptoms of COVID-19 and seeking a medical diagnosis." 116 P.L. 127, Enacted H.R. 134 Stat. 195 §5102(a)(2)(3).

31. Because Mr. Tomecsko worked for Murphy Family for longer than 30 days, Mr. Tomecsko is an "eligible employee" as defined by the FFCRA.

32. Because, upon information and belief, Murphy Family employed fewer than 500 employees, Murphy Family is a "qualifying employer" as defined by the FFCRA.

6

33. On or about December 9, 2020, Mr. Tomecsko became ill with COVID-19 related symptoms and was forced to leave work early.

34. Thereafter, Mr. Tomecsko attended a doctor's appointment and received both a COVID-19 rapid test and a test swab to be sent to the lab, to which results could take up to ten days to receive.

35. Further, Mr. Tomecsko received a work excuse and release from his doctor, to which he promptly provided to Mr. Reihner via email. *See* Exhibit "B".

36. Upon notifying Mr. Reihner of his medical status, Mr. Tomecsko was informed to remain in isolation at home until he received a negative test result.

37. Mr. Tomecsko's doctor inadvertently overlooked his test sample and never sent it to the lab, therefore causing Mr. Tomecsko to remain on leave for an extended period of time before receiving his test results.

38. Mr. Tomecsko inquired if he would be paid for his time-off relating to his possible COVID-19 diagnosis and subsequent delayed test swab, to which he was merely informed to file for unemployment.

39. At no time did Murphy Family allow Mr. Tomecsko access to the benefits he was entitled to under the FFCRA due to his qualifying reasons for leave.

40. Therefore, Mr. Tomecsko was entitled to benefits and was instead denied access to said benefits.

WHEREFORE, Plaintiff, Mr. Tomecsko, hereby requests this Honorable Court consider the above and grant relief in his favor. Specifically, Mr. Tomecsko requests this Court award him back pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment

and continuing interest as calculated by the Court, reasonable attorney's fees, costs of suit, in addition to such other relief as deemed just and proper.

## COUNT II
## WPCL VIOLATIONS
## 43 P.S. §260.1 *et seq*

41. Mr. Tomecsko incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

42. Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

43. The Pennsylvania WPCL, 43 P.S. §260.1 et seq., however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp*, 704 A.2d 678, 680-81 (Pa Super. 1997).

44. Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Frank Burns v. Interdigital Communs. Corp*., at 681.

45. Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." Id. Citing *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).

46. As a company conducting business and employing person(s) in the Commonwealth of Pennsylvania, Murphy Family is "an employer" within the definition of the WPCL 43 Pa. C.S. §260.1a.

47. Mr. Tomecsko, based on the law cited above, was an employee of Murphy Family working within the Commonwealth of Pennsylvania.

48. On or about mid-May of 2021, Mr. Tomecsko was terminated from his employment with Murphy Family.

49. At the time of his termination, Mr. Tomecsko was offered severance pay in the form of one week of accrued vacation pay by Mr. Reihner, to which he verbally accepted.

50. Further, upon information and belief, as enumerated in Murphy Family's employee handbook, one week of vacation time is earned after ninety days of employment.

51. Mr. Tomecsko had worked at Murphy Family for over ninety days at the time of his termination and was therefore entitled to the compensation of one week of vacation pay.

52. As of the date of the filing of this Complaint, Mr. Tomecsko has yet to be compensated for his accrued vacation pay or for the final day of his employment.

53. As a direct and proximate result of the aforementioned conduct, Mr. Tomecsko suffered actual damages, including, but not limited to, lost wages and emotional distress in the past, present and future.

WHEREFORE, Plaintiff Mr. Tomecsko, respectfully requests this Honorable Court enter judgment in his favor and against Defendant, and enter any and all wages due to Mr. Tomecsko, as well as attorney's fees and liquidated damages pursuant to 43 P.S. §260.9 of the Wage Payment and Collection Law, costs of suit and any such other relief as deemed just and proper.

**COUNT III**
**FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF**
**THE FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 206,** *et seq.*

54. Mr. Tomecsko incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

55. Under the FLSA, employers are required "to pay their employees at least a specified minimum hourly wage for work performed, 29 U.S.C. § 206, and to pay one and one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week, 29 U.S.C. § 207." *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 306 (3d Cir. 2003).

56. Mr. Tomecsko is an "employee" as defined by 29 U.S.C. §203(e)(1) of the FLSA.

57. Murphy Family is an "employer" as defined by 29 U.S.C. §203(d) of the FLSA.

58. Murphy Family failed to compensate Mr. Tomecsko for his final day of work in violation of 29 U.S.C. §206(a)(1).

59. Pursuant to the FLSA, once a plaintiff establishes a right to payment "of their… unpaid minimum wages," liquidated damages in an "additional equal amount" is warranted. 29 U.S.C. § 216(b).

60. Furthermore, the FLSA's liquidated damages provisions "is not penal in nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Andrews v. Cross Atlantic Capital Partners, Inc.*, 158 A.3d 123, 134 (Pa. Super. 2017) (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

61. As a direct and proximate result of the aforementioned conduct, Mr. Tomecsko suffered actual damages, including, but not limited to, lost wages and emotional distress in the past, present and future.

WHEREFORE, Plaintiff, Mr. Tomecsko, respectfully requests this Honorable Court enter judgment in his favor and against Defendant, Murphy Family, and enter any and all wages due to Mr. Tomecsko, in excess of arbitration limits, as well as costs and attorney's fees and liquidated damages pursuant to 29 U.S.C.S. §216(b) of the Fair Labor Standards Act.

## COUNT IV
### FAILURE TO PAY MINIMUM WAGE IN VIOLATION OF
### THE PENNSYLVANIA MINIMUM WAGE ACT

62. Mr. Tomecsko incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

63. The PMWA states that "[e]very employer shall pay to each of his or her employees' wages for all hours worked at a rate of not less than . . . [s]even dollars fifteen cents ($7.15) an hour beginning July 1, 2007." 43 Pa. Stat. § 333.104(a) (8); see *Ford-Greene v. NHS, Inc.*, 106 F. Supp. 3d 590, 612–13 (E.D.Pa. 2015).

64. Because the PMWA "substantially parallels" the FLSA, this Court should look to the federal courts' interpretation of the FLSA when analyzing claims under the PMWA. *Philadelphia Metal Trades Council v. Konnerud Consulting W., A.S.*, No. CV 15-5621, 2016 WL 1086709, at *5 (E.D. Pa. Mar. 21, 2016) (citing *Ford-Greene*, 106 F. Supp. 3d at 610–13 (applying the Third Circuit's analysis in *Davis* to the plaintiff's claims under both the FLSA and PMWA).

65. Thus, "plaintiff-employees asserting PMWA violations must substantiate their claims by demonstrating that they performed work for which they were not paid . . . and that the defendant-employer had actual or constructive knowledge of the plaintiff's overtime work." *Alers v. City of Philadelphia*, 919 F. Supp. 2d at 560.

66. Mr. Tomecsko has yet to be fully and properly compensated for his last day of work on or about mid-May of 2021.

67. As a direct and proximate cause of the aforementioned conduct, Mr. Tomecsko suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

68. As set forth hereinabove, Murphy Family's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

WHEREFORE, Plaintiff Mr. Tomecsko, respectfully requests this Honorable Court enter judgment in his favor and against Defendant, and enter any and all wages due to Mr. Tomecsko, as well as attorney's fees and liquidated damages pursuant to 43 P.S. §260.9 of the Wage Payment and Collection Law, costs of suit and any such other relief as deemed just and proper.

## COUNT V
## BREACH OF CONTRACT
*(Pled in the Alternative)*

69. Mr. Tomecsko incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

70. Mr. Tomecsko was entitled, as part of Murphy Family's employment contract, to paid vacation time and the proper payment of straight-time wages for all hours worked.

71. Murphy Family was bound by the duty of good faith and fair dealing. As such, Murphy Family had a duty to calculate and reimburse Mr. Tomecsko for his unpaid vacation time and last day of work upon his termination.

72. Murphy Family failed to ensure accuracy of Mr. Tomecsko's wage payment information thus depriving him of his earned benefit.

73. All conditions precedent to recovery have occurred.

74. As a direct result of this breach of contract, Mr. Tomecsko has suffered damages as set forth hereinabove.

WHEREFORE, Plaintiff, Mr. Tomecsko, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including back pay, any other compensatory damages, costs of suit, consequential damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court.

## COUNT VI
### QUASI-CONTRACT / UNJUST ENRICHMENT
*(Pled in the Alternative)*

75. Mr. Tomecsko incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

76. Mr. Tomecsko had an expectation of payment from Murphy Family.

77. Mr. Tomecsko conferred a benefit upon Murphy Family.

78. Murphy Family appreciated the benefit of Mr. Tomecsko's time and efforts.

79. It would be manifestly unjust if the Murphy Family's acceptance and retention of such benefits were permitted without payment of value to Mr. Tomecsko.

80. As a direct and proximate cause of the aforementioned conduct, Mr. Tomecsko suffered actual damages, including, but not limited to, wage loss, loss of income.

WHEREFORE, Plaintiff, Mr. Tomecsko, hereby requests this Honorable Court consider the above and grant relief in his favor and against Defendant, including back pay, any other compensatory, costs of suit, consequential damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court.

**JURY TRIAL DEMANDED.**

                                            Respectfully submitted,

                                            **J.P. WARD & ASSOCIATES, LLC**

Date: August 13, 2021                            By: _____
                                                      Joshua P. Ward (Pa. I.D. No. 320347)
                                                      Kyle H. Steenland (Pa. I.D. No. 327786)

                                                      J.P. Ward & Associates, LLC.
                                                      The Rubicon Building
                                                      201 South Highland Avenue
                                                      Suite 201
                                                      Pittsburgh, PA 15206
                                                      Counsel for Plaintiff